**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| TERRY CONN, | : | |
| Plaintiff, | : | Civil No. 07-5393 (SDW) |
| v. | : | |
| JACK DOES 1-40, et al., | : | **O P I N I O N** |
| Defendants. | : | |

**APPEARANCES:**

    Terry Conn, Pro Se
    Special Treatment Unit
    1200 Rahway Avenue, P.O. Box 905
    Avenel, NJ 07001

**WIGENTON, District Judge**

This matter comes before the Court upon submission of an amended complaint ("Amended Complaint") by Plaintiff Terry Conn. See Docket Entry No. 4. For the reasons stated below, Conn's Amended Complaint will be dismissed.

**BACKGROUND**

**I.   ORIGINATION OF THE INSTANT ACTION**

On September 21, 2007, the Clerk received the complaint ("Original Complaint") docketed as Entry No. 1 in the Civil Action Banda v. Corzine, 07-4508 (WJM) ("Banda Matter"), as well as Entry No. 1 in the instant matter. The Original Complaint asserted claims on behalf of numerous plaintiffs, including

Plaintiff Conn.[1]  See Docket Entry No. 1.  On November 1, 2007, Judge Martini, presiding over the Banda Matter, issued an Order and accompanying Opinion ("November Order and November Opinion") dismissing the Original Complaint and terminating the Banda Matter.  See instant matter, Docket Entries Nos. 2, 3.  Pursuant to Judge Martini's November Order, all Plaintiffs other than Plaintiff Banda were terminated as Plaintiffs in the Banda Matter, and the Clerk opened individual matters for each of these Plaintiffs, including a separate case for Conn.  See id.  In addition, pursuant to Judge Martini's November Order, Conn's claims contained in the Original Complaint were dismissed without prejudice, and he was granted leave to amend the Original Complaint.  See id.

On November 28, 2007, Conn submitted his Amended Complaint, together with an application for appointment of pro bono counsel.  See Docket Entry No. 4, 5.  Consequently, this Court directed the Clerk to reopen the instant matter for the purpose of screening Conn's Amended Complaint.  See Docket Entry No. 6.

---

[1] Plaintiffs were a group of involuntary civilly-committed persons, pursuant to the Sexually Violent Predator Act ("SVPA"), N.J. Stat. Ann. § 30:4-27.24, et seq., and confined at the Special Treatment Unit Annex, Avenel, New Jersey ("Facility"); Plaintiffs "self-certified" themselves into a "class" for the purpose of filing their original complaint.  See Docket Entry No. 1.

**II.  CONN'S ALLEGATIONS**

    **A.  <u>Allegations Stated in the Original Complaint</u>**

This Original Complaint submitted by Plaintiffs alleged that, on August 30, 2007, Plaintiffs' constitutional rights were violated by 108 different defendants.[2]  See Docket Entry No. 1. The allegations set forth in the Original Complaint fell into two categories: (1) those common to all Plaintiffs; and (2) those based on the circumstances particular to--and, therefore, presenting claims unique to--individual Plaintiffs.  See id.  The allegations common to all Plaintiffs were summarized by Judge Martini as follows:

> According to Plaintiffs, the chain of August 30th events started at 8:25 A.M. with the appearance of an unnamed corrections officer, who was "with a 'gun.'"  Allegedly, five minutes later, at 8:30 A.M., Plaintiffs . . . were "ordered to the Dayroom [and] told to line up and face the wall, [and] keep eyes forward."  Plaintiffs allege that, five minutes later, they were "pat-searched and led to the Rec[reation] Yard."  Seven minutes after they entered the recreation yard, Plaintiffs were handed cups and served with, approximately,

---

[2]  The list of original Defendants was as follows: Defendant Jon Corzine, Governor of the State of New Jersey; Defendant George Hayman, Commissioner of New Jersey Department of Corrections; Defendant Bernard Goodwin, Administrator of the Facility; Defendant Cindy Sweeney, Assistant Superintendent of the Facility; Defendant Anne Milgram, Attorney General for the State of New Jersey; Defendant Merrill Main, Clinical Director of the Facility; Defendant Tina Spanuolo, Supervising Program Specialist at the Facility; and one hundred John/Jack/Jane/Joan Doe Defendants, who are corrections officers or public advocates employed by the State of New Jersey, as well as Defendant John Doe, who is a "Regional Commander of Department of Corrections." See id., caption.

3

> half-a-cup of water per person.  From this point on, water was re-served to Plaintiffs on half-an-hour or hourly basis, although Plaintiffs were finding the supply of water insufficient, and the water itself insufficiently chilled. According to Plaintiffs, at 8:45 A.M., that is, thirteen minutes after Plaintiffs were removed into the recreation yard, the Facility officials brought drug-sniffing canines into the Facility and began a search for controlled substances; the search inside the Facility continues for one hour and twenty-two minutes, and it was followed by a one hour and thirteen minutes search of the external parts of the Facility and adjoining trailers.  After the search was completed, Plaintiffs were ordered to line up in the recreation yard . . . and, fifteen minutes later, an unspecified number of [Plaintiffs] . . . was brought into the Facility for lunch.  About half an hour later, another group of [Plaintiffs] . . . was brought into the Facility for lunch.  The remaining [Plaintiffs] . . . were brought into the Facility to consume lunch in unspecified sub-groups and time increments, with the last Detainee being brought into the Facility no later than at 1:25 P.M., that is, about two hours after the entire lunch service started. Plaintiffs assert[ed] that Plaintiffs experienced "intimidation" during their return to the Facility as a result of a "show of force" which ensued from the fact that the Facility officers were "holding . . . 'Riot Guns.'"  Plaintiffs assert[ed] that [they] were denied (a) access to bathrooms for the period of five minutes, and (b) access to showers for about ten minutes.  The . . . "Dayroom" and Mess Hall became . . . available for regular use by [Plaintiffs] one hour and twelve minutes after all [they] returned to the Facility.

Banda Matter, Docket Entry No. 3, at 3-6 (citations and footnotes omitted).  In addition, Judge Martini's November Opinion summarized allegations unique to each Plaintiff.  See id. at 6-11.  With respect to Conn, Judge Martini noted that Conn "fell

out" and was taken to see a nurse for an unspecified medical reason. See id. at 10 (citations omitted).

**B.     Judge Martini's Treatment of the Original Complaint**

Responding to Plaintiffs' common claims that:

> the search for controlled substances performed by the Facility officials was an "unlawful 'prison' search" impermissible with respect to . . . civilly-committed . . . Plaintiffs [as well as to Plaintiffs' allegations that] the search . . . amounted to a cruel and unusual punishment . . . since: (a) "there was [n]o shade in the [recreation] yard with the exception of a small tent[,] which could not accommodate" [everyone in the yard]; (b) [the outside temperature was] 90 to 95 degree[s]"; (c) re-servings of water to [Plaintiffs] was no more frequent than every half an hour and the water served was "usually warm"; and (d) corrections officers "brandished M-16 style guns with individualized mace balls, [and] other weapons[,] such as batons and night sticks[,] were also brandished,"

id. at 12, Judge Martini dismissed these allegations for failure to state a claim upon which relief may be granted. See id. at 21-36.

Addressing Plaintiffs' Fourth Amendment claims, Judge Martini explained that, pursuant to Hudson v. Palmer, 468 U.S. 517, 530 (1984), and Bell v. Wolfish, 441 U.S. 520, 558-560 (1979), the search of the Facility was not "illegal," because Plaintiffs' expectations of privacy yield to the Facility officials' legitimate governmental interests to ensure that the Facility remains free of controlled substances. See Docket Entry No. 3, at 22-23. With respect to Plaintiffs' due process claims, Judge Martini subdivided Plaintiffs' allegations into three

5

groups: (1) those challenging Plaintiffs' conditions of confinement; (2) those asserting verbal and "visual" harassment; and (3) those related to Plaintiffs' medical conditions. See id. at 23-36. Judge Martini clarified to Plaintiffs that acts or verbal (or "visual") harassment cannot, on their own, serve as a basis to cognizable constitutional challenges. See id. at 30-31.

Addressing Plaintiffs' medical claims, Judge Martini first detailed to Plaintiffs the applicable standard and then addressed their substantive claims. See id. at 32 (citing Rhodes v. Chapman, 452 U.S. 337, 346-47 (1981); Estelle v. Gamble, 429 U.S. 97 (1976); and Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). While Judge Martini dismissed the bulk of Plaintiffs' medical claims with prejudice, see id. at 33-35, he stated, with respect to Conn's claims, that

> the [Original] Complaint is not clear as to the medical needs, and treatment of those needs by the Facility's medical personnel (or the hospital personnel), with respect to . . . Plaintiffs [like Conn]. While it appears that these . . . Plaintiffs were availed to immediate attention by the corrections officials when these . . . Plaintiffs developed their ailments and/or medical conditions, the Complaint fails to specify whether . . . Conn actually obtained any medical treatment when [he] contacted the Facility's nurse.

Id. at 35.

Consequently, Judge Martini granted Conn leave to amend the Original Complaint to clarify his claims. See id. at 62.

6

Next, with respect to Plaintiffs' conditions of confinement claims, Judge Martini explained to Plaintiffs that the Third Circuit established a two-part test reading as follows:

> we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes. In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purpose assigned to them.

Union County Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir. 1983). Taking judicial notice of the weather conditions existing in Plaintiffs' locale during the hours at issue,[3] Judge Martini concluded that, being placed in the Facility's recreation yard for three to five hours on a summer morning, when the weather conditions were mild, could not amount to a "hardship over an extended period of time," or to "adverse conditions" excessive in relation to the purpose of keeping Facility detainees outside the Facility during a legitimate search for controlled substances. See id. at 26-27. Consequently, Judge Martini dismissed all Plaintiffs' conditions of confinement common claims.

Finally, turning to the issue of whether to certify Plaintiff's class, Judge Martini explained that the Original

---

[3] The weather conditions were as follows: temperature varied between 72 and 84.5 degrees Fahrenheit, humidity was 61 percent, and western wind varied from 3.5 to 6.9 mph. See Docket Entry No. 3, at 26.

Complaint provided him with no basis for such certification, pursuant to the standard set in Rule 23, see id. at 36-50, and denied certification while observing that a court should be

> mindful of the fact that it is all too easy for one inmate with some purported knowledge of the law to persuade others to join a complaint, whether or not it is in the best interests of the others to do so.

Id. at 38 (citing Swenson v. MacDonald, 2006 U.S. Dist. LEXIS 5784, at *5-6 (D. Mont. Jan. 30, 2006)).  Judge Martini, therefore, dismissed the Original Complaint for failure to state a claim upon which relief may be granted.  See Docket Entries Nos. 3, 4.

      C.    **Content of Conn's Amended Complaint**

On November 28, 2007, Conn submitted his Amended Complaint. See Docket Entry No. 4.  The Amended Complaint is an eight-page document naming, as Defendants, "John Doe, Regional Commander of the Department of Corrections Special Operations Group" and Jack Does, 1-40, as well as Joan Does, 1-40, who are "Department of Corrections Special Operations Group Correctional Officers."  See id. at 1, caption.  Following the caption, the Amended Complaint includes: (a) 5 paragraphs of "Instructions," see id. at 1; (b) two pre-printed pages of instructions titled "Form to Be Used by a Prisoner in Filing a Civil Rights Complaint," see id. at 2-3; (c) self-typed list of parties named in the Amended Complaint asserting that the Defendants in this action "gave unprofessional errors of judgement and gross negligence in ordering and

enforcing the removal of all [Facility detainees] from the . . . [b]uilding to stay out in [h]ot [s]un for approx[imately six and a half] hours," see id. at 4-5; (d) self-typed section titled "Statement of Claims" consisting of 27 paragraphs, see id. at 5-8; and (e) a request for relief in the amount of $815 million in damages, where $15 million are sought from Defendant "John Doe, Regional Commander of the Department of Corrections Special Operations Group," and $10 million are sought from each Joan and/or Jack Doe, who are "Department of Corrections Special Operations Group Correctional Officers." See id. at 8.

**D.   Conn's Amended Complaint Fails to State a Claim**

The Amended Complaint repeats the allegations made in the Original Complaint, which were dismissed by Judge Martini for failure to state a claim upon which relief may be granted. Judge Martini's ruling will not be disturbed by this Court: Conn cannot get a "second bite on the apple" by merely reiterating the dismissed claims.

In particular, Conn asserts, with respect to his medical claims that he suffered from heat stroke and passed out. Another detainee helped him to the nurse's station. The nurse treated him and gave him permission to return to his dorm to rest. (Am. Complt., ¶ 11). Conn states: "[t]his Complaint IS NOT against the Medical Dept. For they are the only ones that actually

help[ed] and gave this Plaintiff proper treatment." (Am. Complt., ¶ 17).

Thus, it appears that Conn asserts only those claims that Judge Martini dismissed, including the claims that the detainees were sent outside and were not in what they would consider ideal conditions during the search of the facility. Nothing in these allegations indicates that the defendants sought to inflict unnecessary and wanton infliction of pain on Conn when Defendants removed all the facility detainees into the facility recreation yard in order to conduct a facility-wide search for controlled substances. Rather, as stated by Judge Martini in the November Opinion and Order, it is apparent from the facts alleged in the complaint that the defendants were pursuing a legitimate goal reasonably related to the facility's governmental penological interests.

## CONCLUSION

For the foregoing reasons, Conn's Amended Complaint will be dismissed. Conn's application for appointment of pro bono counsel will be dismissed as moot.

An appropriate Order accompanies this Opinion.

/s/SUSAN D. WIGENTON
United States District Judge

**Dated:MARCH 7, 2008**